UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-62420-BLOOM/Valle

DOREEN STEWART JOHNSON,
and ANTHONY JOHNSON,

    Plaintiffs,

v.

DISTRICT DIRECTOR OF U.S. CITIZENSHIP
AND IMMIGRATION SERVICES,
FLORIDA SOUTHEAST REGION, *et al.*,

    Defendants.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiffs Doreen Stewart Johnson ("Ms. Johnson") and Anthony Johnson's (collectively, "Plaintiffs") Motion for Summary Judgment, ECF No. [15] ("Plaintiffs' Motion"), and Defendants' (the "Government") Motion for Summary Judgment, ECF No. [17] (the "Government's Motion") (collectively, the "Motions"). The Court has carefully reviewed the Motions, the record, all supporting and opposing filings, the exhibits attached thereto, and is otherwise fully advised in the premises. For the reasons that follow, Plaintiffs' Motion is denied and the Government's Motion is granted.

**I.    BACKGROUND**

Ms. Johnson is a citizen of Jamaica who has resided, without lawful immigration status, in the United States since March of 2001. *See* Plaintiffs' Motion at 4-6, 12. While in Jamaica, Ms. Johnson paid a "Mr. Morgan" ("Morgan") to acquire a visa that would allow her to enter the United States. *See* ECF No. [17-1]–[17-13] (Administrate Record ("AR")) at 31. While Morgan

eventually obtained a "visa" for Ms. Johnson, the United States government has never accorded Ms. Johnson a lawful visa to enter the United States. *See id.* at 31, 36. Ms. Johnson arrived in the United States on March 25, 2001 in the company of Morgan, a man named "Rudy," and several women. *See id.* At the airport, Ms. Johnson claims that Rudy entered a room with an immigration officer, and when the two men exited the room, Morgan gave the immigration officer all of the "visas" and "passports," including Ms. Johnson's. *See id.* at 32. According to Ms. Johnson, the officer "let us all through" without asking Ms. Johnson any questions, and Ms. Johnson does not remember whether the immigration officer stamped her passport. *Id.* Ms. Johnson states that she retrieved her passport from Morgan or Rudy a few days later, and that the passport "had pages missing." *Id.*

The record indicates that Ms. Johnson has been married twice since entering the United States. Ms. Johnson married Mogrey Delano Johnson ("Mogrey Johnson") in 2004, who filed a Form I-130, Petition for Alien Relative, on Ms. Johnson's behalf shortly thereafter. *See id.* at 317, 344, 363. Ms. Johnson concurrently filed a Form I-485, Application to Adjust Status, and Form I-601, Application for Waiver of Ground of Excludability, in which she states that she "entered the U.S. on someone else's passport and visa." *Id.* at 363. The United States Citizen and Immigration Services ("USCIS") requested additional evidence of Ms. Johnson's manner of entry, including but not limited to a Form I-94, Arrival/Departure Record. *Id.* at 340. In response, Ms. Johnson submitted a copy of a Form I-102, Application for Replacement/Initial Nonimmigrant Arrival-Departure Document, that she filed with the assistance of an attorney on October 26, 2004. *See id.* at 339. In the Form I-102, Ms. Johnson's attorney states that Ms. Johnson "lost her original I-94 since entering the county." *Id.* The USCIS denied as abandoned Ms. Johnson's Form I-485 on February 3, 2005, finding that Ms. Johnson had failed to submit

sufficient evidence of her admission into the United States.  *See id.* at 320-21, 508.  The USCIS then denied Ms. Johnson's Form I-601 Waiver, as she no longer had an application to adjust status pending, and granted the Form I-130.  *See id.* at 317, 330.

Ms. Johnson and Mogrey Johnson divorced in 2012, and Ms. Johnson married Anthony Johnson that same year.  *See id.* at 191-92.  Anthony Johnson filed a Form I-130 on Ms. Johnson's behalf shortly thereafter, which the USCIS approved, and Ms. Johnson again filed a Form I-485 and I-601 Waiver.  *Id.*  In the Form I-601, Ms. Johnson states that she "sought to procure an immigration benefit by fraud or by concealing or mispresenting a material fact," and Ms. Johnson's attorney filed a document stating that Ms. Johnson had been "admitted with documents that . . . were probably fraudulently obtained."  *Id.* at 135, 140.  The USCIS interviewed Ms. Johnson on July 29, 2013, where Ms. Johnson provided her own signed statement, an affidavit from her sister-in-law, and an affidavit from a friend in an effort to meet her burden to establish eligibility to adjust status.  *See id.* at 31, 32, 33, 34.  On August 5, 2013, the USCIS denied Ms. Johnson's Form I-485 (and I-601) as abandoned, having concluded that Ms. Johnson did not provide sufficient evidence of her admission into the United States.  *See id.* at 25-29.  Ms. Johnson moved to reopen and reconsider that decision with the USCIS, which the USCIS granted on October 30, 2013.  *See id.* at 20, 23.  The USCIS then issued another decision on April 8, 2014, again denying Ms. Johnson's Form I-485 for her failure to provide sufficient evidence of lawful admission into the United States.  *See id.* at 15-16.  Ms. Johnson filed a motion to reopen that decision, which the USCIS dismissed, noting that Ms. Johnson had failed to meet her burden to establish her admission into the United States, "lawful or otherwise."  *Id.* at 1.

In the instant proceedings, Plaintiffs request that this Court: (1) declare USCIS's decision to deny Ms. Johnson's application for adjustment of status and waiver unlawful; (2) order that USCIS be enjoined from denying Ms. Johnson's application for adjustment of status and waiver; and (3) order USCIS to immediately approve Ms. Johnson's application for adjustment of status and waiver. *See* ECF No. [1] ("Complaint"). Both Plaintiffs and the Government now move for summary judgment, and Plaintiffs have filed a Response to the Government's Motion. *See* ECF Nos. [15], [17], [18].

## II.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130,

1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'"  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor.  *Shiver*, 549 F.3d at 1343.  But even where an opposing party neglects to submit any alleged material facts in controversy, the court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed.  *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

**III.   DISCUSSION**

Plaintiffs seek an order from this Court requiring that the USCIS grant Ms. Johnson's Form I-485 and allow her to become a lawful permanent resident ("LPR"). Pursuant to 8 U.S.C.

§ 1255(a), an alien may adjust status to that of an LPR at the discretion of the Attorney General[1] if "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." The burden of proving eligibility for adjustment of status is on the alien. *See* 8 U.S.C. § 1361. Ms. Johnson has submitted an application to adjust status, and an immigrant visa is presumably immediately available to her through her United States citizen husband, who has filed and had approved a Form I-130 on her behalf. *See* 8 U.S.C. § 1151(b)(2)(A)(i). The USCIS denied Ms. Johnson's Form I-485 based on its finding that Ms. Johnson failed to establish her admissibility, a conclusion Ms. Johnson asks this Court to overturn. *See* AR at 1.

8 U.S.C. Code § 1101(13) defines the term "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." Accordingly, "[i]n order for an alien to adjust status to that of a lawful permanent resident [under § 1255(a)], the alien must: (1) have been inspected and admitted or paroled into the United States . . . ." *Reganit v. Sec'y, Dep't of Homeland Sec.*, 814 F.3d 1253, 1257 (11th Cir. 2016) (internal quotations omitted). Pursuant to recent guidance from the Board of Immigration Appeals ("BIA"):

> an alien who physically presents herself for questioning and makes no knowing false claim to citizenship is 'inspected,' even though she volunteers no information and is asked no questions by the immigration authorities . . . such an alien has satisfied the 'inspected and admitted' requirement of 245(a) of the Act [8 U.S.C. § 1255(a)].

---

[1] "This grant of authority to the Attorney General has been delegated to the Department of Homeland Security ("DHS") and to its agency, USCIS." *Torres v. Chertoff*, 2007 WL 4261742, at *3 n.4 (N.D. Ga. Nov. 30, 2007) (citing 8 U.S.C. § 1103(a); 6 U.S.C. §§ 271(b), 557; 8 C.F.R. § 245.2).

*Matter of Quilantan*, 25 I&N Dec. 285, 293 (BIA 2010) (citing *Matter of Areguillin*, 17 I&N Dec. 308 (BIA 1980) and *Matter of G-*, 3 I&N Dec. 136, 138 (BIA 1948)).  The circuit courts of appeals to have addressed the issue have afforded deference to *Quilantan*'s holding that "inspected and admitted," as required to adjust status under § 1255(a), refers to a procedurally proper, rather than substantively valid, admission.  *See Tula Rubio v. Lynch*, 787 F.3d 288, 292 (5th Cir. 2015); *Tamayo-Tamayo v. Holder*, 725 F.3d 950, 953 (9th Cir. 2013) (describing its prior decision of *Hing Sum v. Holder*, 602 F.3d 1092, 1097-1101 (9th Cir. 2010) as having held that "Congress intended 'admission' to mean lawful entry only in the procedural sense."); *Avalos-Martinez v. Johnson*, 560 F. App'x 385, 389 (5th Cir.), *cert. denied*, 135 S. Ct. 182 (2014); *Cordova-Soto v. Holder*, 659 F.3d 1029, 1034 (10th Cir. 2011); *see also Ali v. U.S. Citizenship & Immigration Servs.*, 2011 WL 1585848, at *4 (S.D. Fla. Apr. 22, 2011) ("A procedurally proper entry requires the alien to 'physically present himself for questioning and make no knowing false claim to citizenship.'" (quoting *Quilantan*, 25 I&N Dec. at 293) (internal alternations omitted)).

Plaintiffs ask the Court to declare the USCIS's decision "unlawful," find that Ms. Johnson has been admitted to the United States within the meaning of *Quilantan*, and order that the USCIS allow her to adjust status.  Plaintiffs contend that the Court has jurisdiction to order the requested relief pursuant to "28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1651 (the All Writs Act); 28 U.S.C. § 1361 (jurisdiction over actions for mandamus); [and] The Administrative Procedures Act 5 U.S.C. § 701 et seq."  Complaint ¶ 14.  The Court, however, is limited in its jurisdiction to review immigration decisions issued by the Department of Justice and the Department of Homeland Security.  Congress has mandated that

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and *sections 1361*

> *and 1651* of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, *or 1255 of this title*, or
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(i), (ii) (emphasis added). The Supreme Court has held that these subsections "convey that Congress barred court review of discretionary decisions [where] Congress itself set out the Attorney General's discretionary authority in the statute," including "substantive decisions . . . made by the Executive in the immigration context as a matter of grace, things that involve whether aliens can stay in the country or not." *Kucana v. Holder*, 558 U.S. 233, 247 (2010). Such Executive decisions include "waivers of inadmissibility based on certain criminal offenses, § 1182(h), or based on fraud or misrepresentation, § 1182(i); cancellation of removal, § 1229b; permission for voluntary departure, § 1229c; *and adjustment of status, § 1255*." *Id.* at 247-48 (emphasis added). Therefore, while Plaintiffs frame the instant issue as a question of "evidentiary standards," the relief requested necessitates that the Court review and reverse the USCIS's determination that Ms. Johnson is ineligible to adjust status under 8 U.S.C. § 1255. *See* Plaintiffs' Motion at 5. As the USCIS's power to grant or deny a § 1255 application (Form I-485) is discretionary, the Court does not have jurisdiction to review the USCIS's decision. *See* 8 U.S.C. § 1252(a)(2)(B)(i), (ii); *Kucana*, 558 U.S. at 247-48; *Ali*, 2011 WL 1585848, at *5 ("USCIS's denial of Plaintiffs I-485 Petition to Adjust Status and USCIS's revocation of Plaintiffs I-140 Petition were discretionary decisions assigned to the Attorney General. Therefore, this Court does not have jurisdiction to review these decisions.");

8

*see also Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419-20 (11th Cir. 2009) (finding that "[t]he district court carefully concluded that 28 U.S.C. § 1361, the mandamus statute, provides no basis for jurisdiction because the action complained of is discretionary. . . . The court could have also bottomed this conclusion on 8 U.S.C. § 1252(a)(2)(B), which explicitly strips the district court of jurisdiction under the mandamus statute."). Simply put, the Court cannot order the USCIS to grant Ms. Johnson's Form I-485.

Even assuming jurisdiction to entertain Ms. Johnson's Complaint, the Court finds that Ms. Johnson has failed to establish that relief is warranted under the Administrative Procedure Act ("APA"). Under the APA, a court may set aside agency actions, findings, and conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E). This standard is "exceedingly deferential" to the agency. *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996). "To determine whether an agency decision [is] arbitrary or capricious, the reviewing court must consider whether the decision [is] based on a consideration of the relevant factors and whether there ha[s] been a clear error of judgment." *Id*. (quoting *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 376 (1989). Examples of arbitrary or capricious agency decisions include those where an agency considers material "Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of

agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Similarly, "'[t]he substantial evidence standard limits the reviewing court from deciding the facts anew, making credibility determinations, or re-weighing the evidence.'" *DeKalb Cty. v. U.S. Dep't of Labor*, 812 F.3d 1015, 1020 (11th Cir. 2016) (quoting *Stone & Webster Const., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1133 (11th Cir. 2012)). "Substantial evidence . . . 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Under this standard, a court may "'reverse such findings only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough." *Id.* (quoting *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1304 (11th Cir. 2015)). "Even when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'" *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

In this case, the USCIS denied as abandoned Ms. Johnson's application to adjust status on August 5, 2013, after concluding that Ms. Johnson had "failed to provide evidence of [her] lawful admission." *See* AR at 36. The USCIS reopened that decision and, upon reconsideration of the record and her testimony, found that Ms. Johnson "failed to provide evidence of [her] lawful admission." *Id.* at 16. The USCIS specifically stated that it "carefully reviewed and considered" Ms. Johnson's statement and other "evidence [she] submitted," but that said evidence was "insufficient to establish [her] eligibility for adjustment." *Id*. The USCIS then dismissed Ms. Johnson's motion to reopen, noting that it had previously denied Ms. Johnson's Form I-102, Application for Replacement/Initial Nonimmigrant Arrival-Departure Document,

and that the "USCIS has no record of your entry or admission into the United States at all, lawful or otherwise." *Id.* at 1.

On the record before the Court, Ms. Johnson has not met her burden to establish that the USCIS's determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that it is "unsupported by substantial evidence." *See* 5 U.S.C. §§ 706(2)(A), (E). It is uncontested that Ms. Johnson lacks an I-94 or any other document to establish her inspection and admission – lawful or otherwise – into the United States.[2] Lacking documentary evidence of her admission, Ms. Johnson attempted to meet her burden before the USCIS by providing her own signed statement, the testimony of her sister-in-law, and the testimony of her friend – statements that rely, almost entirely, on information provided by Ms. Johnson herself. *See* AR at 33, 34. While the BIA and USCIS have found an applicant's own testimony sufficient to establish a procedural admission into the United States under certain circumstances, "the mere fact that the record may support a contrary conclusion is not enough" for the Court to invalidate the USCIS's decision in this case. *See DeKalb Cty.*, 812 F.3d at 1020.

## IV. CONCLUSION

For all of the reasons stated herein, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Motion for Summary Judgment, **ECF No. [15]**, is **DENIED**;

2. The Government's Motion for Summary Judgment, **ECF No. [17]**, is **GRANTED**;

3. Final Judgment will be entered by separate order.

---

[2] Although Ms. Johnson stated that she lost her I-94 and applied for a replacement in 2004, at least one of her attorneys has implied that Ms. Johnson may never have even possessed an I-94. *See* AR at 140 ("*If* she was issued an I-94, it was taken and retained by the trafficker." (emphasis added)). The Court notes that neither party has argued in these proceedings that Ms. Johnson is a victim of human trafficking.

Case No. **15-cv-62420-BLOOM/Valle**

**DONE AND ORDERED** in Miami, Florida this 26th day of September, 2016.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copied to:

Counsel of Record